172 Cal.App.4th 1388 (2009)
___ Cal.Rptr.3d ___
K.J., Plaintiff and Appellant,
v.
THE ROMAN CATHOLIC BISHOP OF STOCKTON, Defendant and Respondent.
No. C058034.
Court of Appeals of California, Third District.
April 10, 2009.
*1391 Manly & Stewart, John C. Manly and Vince W. Finaldi for Plaintiff and Appellant.
Zalkin & Zimmer, Irwin M. Zalkin, Michael H. Zimmer, Devin M. Storey and Michael J. Kinslow as Amici Curiae on behalf of Plaintiff and Appellant.
Neumiller & Beardslee, Paul N. Balestracci and Lisa Blanco Jimenez for Defendant and Respondent.

OPINION
BUTZ, J. 
This case requires us to unravel the many changes and revisions to Code of Civil Procedure section 340.1,[1] a special statute of limitations governing claims by victims of childhood sexual abuse.
Plaintiff K.J. (suing under the fictitious name of "John K.J. Doe") alleges he was sexually abused and molested by "Doe 4," an unnamed priest and agent of defendant the Roman Catholic Bishop of Stockton (the Bishop), when plaintiff was between seven and 11 years of age. According to the complaint, the Bishop condoned the misconduct and protected Doe 4, despite actual or constructive knowledge that the priest was a chronic child molester.
Plaintiff, now well into middle age, alleges he "immediately repressed" all memory of the acts of molestation at the time they occurred. Only in June 2004, 33 years after the last molestation occurred, did plaintiff begin remembering the sexual abuse perpetrated upon him by Doe 4, when he connected it to his current psychological problems.
(1) In 2002, when the Legislature amended section 340.1 by opening up a one-year "revival window" for bringing time-barred childhood sexual abuse claims against third party defendants, it also established a new outer date for bringing these types of claims, to wit: "within three years of the date the plaintiff discovers or reasonably should have discovered that psychological *1392 injury or illness occurring after the age of majority was caused by the sexual abuse . . . ." (§ 340.1, subd. (a).) The question on appeal is whether the quoted language applies retroactively to childhood sexual abuse claims against entity defendants that had already lapsed by virtue of the statute of limitations. We agree with the trial court that the answer to this question is "no." Plaintiff's claims are time-barred. We shall affirm.

FACTUAL AND PROCEDURAL BACKGROUND

The complaint
This action was filed on May 31, 2007, by plaintiff who, by then, was either 47 or 48 years old.[2] From 1967, to 1971, plaintiff was an altar boy and parishioner at defendant "Doe 3," a Catholic church and school, wholly owned and operated by the Bishop and defendant "Doe 2." During that time, when he was between the ages of seven and 11, plaintiff came under the direction and control of "Doe 4,"[3] a priest and seminarian at the church, who used his position of trust and authority to sexually harass, molest and abuse plaintiff.
Plaintiff alleges, on information and belief, that the Bishop "knew or should have known and/or [was] put on notice of DOE 4's past sexual abuse of minors, past arrests, charges, claims and/or investigations, and his propensity and disposition to engage in . . . unlawful sexual activity with minors such that Defendant[] knew or should have known that DOE 4 would commit wrongful sexual acts with minors, including Plaintiff." Instead of implementing reasonable safeguards to protect Doe 4 from contact with minors, the Bishop ignored and/or covered up the sexual abuse of minors that had already been perpetrated by Doe 4. The coverup was part of a "conspiratorial plan" to conceal wrongful acts, avoid detection, block public disclosure of child sexual molestation and abuse, and preserve a false appearance of propriety.
The complaint contains a lurid description of the sexual abuse perpetrated on plaintiff by Doe 4, which acts took place "a few times a week," and sometimes were performed on church premises and within full view of other priests.
Despite the frequency and horrendous nature of the acts, plaintiff alleges that he "immediately repressed all memories" and "had no awareness" of them. It was not until June 2004, that plaintiff "began remembering" the *1393 sexual abuse that was perpetrated on him as a child more than 30 years ago. At that time, plaintiff "discovered" that psychological injuries and illnesses he was experiencing were caused by the childhood sexual abuse he suffered at the hands of Doe 4.
Based on these general allegations, plaintiff posits causes of action against the Bishop for negligence, negligent supervision, negligent hiring and retention, negligent failure to warn, train or educate, constructive fraud, and intentional infliction of emotional distress.

Procedural history
The Bishop demurred to the complaint, asserting that because plaintiff's childhood sexual abuse claims had lapsed under then applicable statutes of limitations and were not brought within the one-year revival window provided for in the 2002 amendment to section 340.1, they were untimely. Plaintiff maintained that his claims were governed by the "delayed discovery" rule of section 340.1, subdivision (a) so that it was timely if brought within three years of the date he reasonably should have discovered that his adult psychological injury was caused by the childhood sexual abuse.
The trial court, relying on the decision in Hightower v. Roman Catholic Bishop of Sacramento (2006) 142 Cal.App.4th 759 [48 Cal.Rptr.3d 420] (Hightower), agreed with the Bishop and sustained the demurrer without leave to amend. Plaintiff appeals from the final judgment of dismissal.

DISCUSSION

I. Applicable Principles
(2) Because this appeal arises from a judgment of dismissal following the sustaining of a demurrer without leave to amend, we give the complaint a reasonable interpretation, and treat the demurrer as admitting all material facts properly pleaded. (Doe v. City of Los Angeles (2007) 42 Cal.4th 531, 543 [67 Cal.Rptr.3d 330, 169 P.3d 559].) "We apply well-established principles of statutory construction in seeking `to determine the Legislature's intent in enacting the statute "`so that we may adopt the construction that best effectuates the purpose of the law.'"'" (Shirk v. Vista Unified School Dist. (2007) 42 Cal.4th 201, 211 [64 Cal.Rptr.3d 210, 164 P.3d 630] (Shirk).) The statutory language is generally the most reliable indicator of legislative intent. However, if the statutory language may reasonably be given more than one interpretation, courts may consider various extrinsic aids, including the *1394 purpose of the statute, the evils to be remedied, the legislative history,[4] public policy, and the statutory scheme encompassing the statute. (42 Cal.4th at p. 211.)

II. Analysis
(3) "Section 340.1 sets forth a special statute of limitations for victims of childhood sexual abuse." (County of Los Angeles v. Superior Court (2005) 127 Cal.App.4th 1263, 1268 [26 Cal.Rptr.3d 445].) It therefore prevails over more general statutory limitations periods that may apply. (Aetna Cas. etc. Co. v. Pacific Gas & Elec. Co. (1953) 41 Cal.2d 785, 787 [264 P.2d 5].)

A. The Bishop Is a Section 340.1, Subdivision (b)(2) Defendant
Section 340.1 contains varying limitations periods for bringing actions for childhood sexual abuse[5] against different groups of defendants. Deciphering the statute is rendered more complicated by the fact that these limitations periods have been amended several times over a span of years. To clarify our analysis at the outset, we observe that the Bishop is being sued as a defendant identified in subdivision (b)(2) of the statute.
(4) Collectively, subdivisions (a) and (b)(1) of section 340.1 permit a cause of action for childhood sexual abuse to be brought against a nonperpetrator defendant within three years of the date of the discovery of the psychological injury caused by the abuse, but not later than the victim's 26th birthday. (§ 340.1, subds. (a), (b)(1).) Subdivision (b)(2) creates an exception to the age 26 cap for bringing claims against third party defendants who had actual or constructive notice of their agent's unlawful sexual misconduct, but failed to prevent it. "The words of subdivision (b)(2) create three conditions that must be met before it applies to a particular case: (1) the nonperpetrator defendant `knew or had reason to know, or was otherwise on notice'; (2) that the perpetrator  `an employee, volunteer, representative, or agent'had engaged in `unlawful sexual conduct'; and (3) `failed to take reasonable *1395 steps, and to implement reasonable safeguards, to avoid acts of unlawful sexual conduct in the future by that person, including, but not limited to, preventing or avoiding placement of that person in a function or environment in which contact with children is an inherent part of that function or environment.'" (Doe v. City of Los Angeles, supra, 42 Cal.4th at p. 545.)
Plaintiff alleged that the Bishop knew or should have known of Doe 4's past sexual abuse of minors, parishioners and students under his charge, yet failed to take reasonable safeguards to prevent him from coming into contact with children such as plaintiff; he also alleged that the Bishop covered up such abuse and permitted Doe 4 to be placed in a situation that enabled him to continue to sexually abuse plaintiff. Accordingly, plaintiff's causes of action are governed by the statute of limitations applicable to section 340.1, subdivision (b)(2) defendants.[6]

B. The Issue in Controversy: Was Plaintiff's 2007 Claim Timely?
As enacted in 2002, subdivision (c) of section 340.1 provided for a one-year revival window for bringing claims such as plaintiff's, which had already lapsed[7] by virtue of the statute of limitations. It provides: "Notwithstanding any other provision of law, any claim for damages described in [subdivision (a)(2) or (3)] that is permitted to be filed pursuant to [subdivision (b)(2)] that would otherwise be barred as of January 1, 2003, solely because the applicable statute of limitations has or had expired, is revived, and, in that case, a cause of action may be commenced within one year of January 1, 2003." (Italics added.)
(5) Plaintiff missed the revival window, having waited until May 2007 to file this action. He nevertheless argues that his action is timely based on the "delayed discovery" provision of section 340.1, which permits bringing an action against intentional nonabuser defendants until eight years from the age of majority or within "three years of the date the plaintiff discovers or reasonably should have discovered that psychological injury or illness occurring after the age of majority was cause by the sexual abuse," whichever is *1396 later. (§ 340.1, subds. (a), (b)(1), (2).) Plaintiff's position is that, because he repressed all memory of the molestations, his present claim is timely under the quoted provision because it never accrued until he recovered the memory of the horrors inflicted on him by Doe 4, some 33 years later. Alternatively, plaintiff contends that his claims are timely under equitable, common law theories of delayed accrual.
The Bishop counters that the Legislature gave plaintiffs in K.J.'s position only one chance to bring childhood sexual abuse claims that had previously lapsedthe calendar year 2003and plaintiff's failure to avail himself of that opportunity forever bars his action. Moreover, the Legislature has decisively precluded use of common law doctrines of delayed discovery by deleting language in section 340.1 that had previously permitted their application.
Resolution of the dispute regarding the timeliness of plaintiff's 2007 claim requires us to take a circuitous journey through the history of the statute.

C. History of Section 340.1
(6) As a general rule, a cause of action for childhood sexual abuse accrues at the time of molestation. (John R. v. Oakland Unified School Dist. (1989) 48 Cal.3d 438, 443 [256 Cal.Rptr. 766, 769 P.2d 948] (John R.); Doe v. Bakersfield City School Dist. (2006) 136 Cal.App.4th 556, 567, fn. 2 [39 Cal.Rptr.3d 79].) Prior to the enactment of section 340.1 in 1986, courts applied former section 340, which provided for a one-year statute of limitations for child sexual abuse claims. Courts also applied section 352, which tolled the running of the statute while the plaintiff was a minor, such that the action could be timely brought on or before the plaintiff's 19th birthday. (See former § 340, subd. (3); DeRose v. Carswell (1987) 196 Cal.App.3d 1011, 1015 [242 Cal.Rptr. 368].)
Since the alleged molestation ceased in 1971 when plaintiff was 11 years old, he had until his 19th birthday to file suit. He did not. Accordingly, the statute of limitations expired on plaintiff's claim against the Bishop either in 1978 or 1979. (See fn. 2, ante.)

1. Enactment of section 340.1.

In 1986, the Legislature enacted section 340.1, providing for a three-year statute of limitations for sexual abuse by a relative or household member of a child under the age of 14 years. (Former § 340.1, added by Stats. 1986, ch. 914, § 1, pp. 3165-3166; see Shirk, supra, 42 Cal.4th at p. 207.) The statute also included a revival provision, permitting the new rule to be applied *1397 to any action commenced after January 1, 1987, that would otherwise have been barred by the statute of limitations prior to that date (former § 340.1, subd. (e)), and contained additional language permitting the courts to apply equitable doctrines of delayed discovery.[8] However, none of these provisions applied to nonperpetrator defendants such as the Bishop. Accordingly, plaintiff's claims against the Bishop remained time-barred.

2. 1990 amendments.

In 1990 section 340.1 was expanded to cover any person who sexually abused a child. (Shirk, supra, 42 Cal.4th at p. 207.) The Legislature also extended the statute of limitations to eight years from the date the victim "attains the age of majority" (i.e., age 26) or three years from the date the victim "discovers or reasonably should have discovered that psychological injury or illness occurring after the age of majority was caused by the sexual abuse." (§ 340.1, former subd. (a); see Shirk, supra, at p. 207.) A plaintiff over the age of 26 years had to provide a certificate of merit from a mental health practitioner. (§ 340.1, former subds. (a), (b) & (d), as amended by Stats. 1990, ch. 1578, § 1, pp. 7550-7551; Shirk, at p. 207.) Again, because the amendment did not apply to nonabuser defendants, it did not affect plaintiff's claim.

3. 1994 amendments.

In 1994, the Legislature again amended section 340.1 by expressly providing that the 1990 amendments "apply to any action commenced on or after January 1, 1991, including any action otherwise barred by the period of limitations in effect prior to January 1, 1991, thereby reviving those causes of action which had lapsed or technically expired under the law existing prior to January 1, 1991." (§ 340.1, former subds. (o)-(p), added by Stats. 1994, ch. 288, § 1, p. 1928.)
But while the Legislature giveth with one hand, it taketh away with the other. The 1990 section 340.1, subdivision (l), which had permitted the courts to apply "equitable exceptions to the running of the applicable statute of limitations," including those relating to "delayed discovery of injuries," (see *1398 fn. 8, ante) was deleted. (Stats. 1994, ch. 288, § 1, p. 1928; see Historical and Statutory Notes, 13C West's Annot. Code Civ. Proc. (2006 ed.) foll. § 340.1, p. 173 (Historical and Statutory Notes).) As we shall see, that deletion was significant.

4. 1998 and 1999 amendments.

In 1998, the Legislature amended section 340.1 to include, for the first time, claims alleging childhood sexual abuse against persons or entities other than the perpetrator. (§ 340.1, former subd. (a)(2) & (3), added by Stats. 1998, ch. 1032, § 1; Mark K. v. Roman Catholic Archbishop (1998) 67 Cal.App.4th 603, 610, fn. 4 [79 Cal.Rptr.2d 73].) The amendment, which permitted suits against parties whose negligent or intentional acts were a "legal cause" of a minor's sexual abuse, also created a firm time cap for actions against nonperpetrator defendants, requiring them to be brought not later than the victim's 26th birthday. (§ 340.1, former subd. (b)(1), amended by Stats. 1998, ch. 1032, § 1; Shirk, supra, 42 Cal.4th at p. 208.)
Although the 1998 legislation permitted tort claims against intentional nonabusers such as the Bishop, plaintiff was by then 39 or 40 years old, well beyond the 26-year-old outer limit provided for in the statute. Thus, his claim remained lapsed.
The Legislature again amended section 340.1 in 1999, clarifying that its 1998 changes relating to the liability of nonabuser defendants applied only to actions begun on or after January 1, 1999, or if filed before that time, actions still pending as of that date, "including any action or causes of action which would have been barred by the laws in effect prior to January 1, 1999." (See Shirk, supra, 42 Cal.4th at p. 208, quoting § 340.1, former subd. (s), added by Stats. 1999, ch. 120, § 1.)

5. 2002the final amendments.

(7) In 2002, the Legislature put one final flourish on section 340.1. (Stats. 2002, ch. 149, § 1.) The age 26 cap was retained (§ 340.1, subd. (b)(1)) except in cases such as this, where a nonabuser defendant knew or had reason to know of its agent's or employee's unlawful misconduct and failed to take reasonable steps to protect others from the employee's predatory behavior. (§ 340.1, subd. (b)(2).) In those cases, the statute provided that the limitations would run until the later of the plaintiff's 26th birthday or three years after the plaintiff discovers or should have discovered that his psychological injuries were the result of childhood sexual abuse. At the same time, the Legislature added current subdivision (c) to section 340.1, which expressly revived lapsed claims against intentional entity defendants that had *1399 been barred due to the expiration of the statute of limitations. For those claims, the Legislature opened up a one-year window period for the bringing of new actions, beginning on January 1 and ending on December 31, 2003. (Hightower, supra, 142 Cal.App.4th at p. 766.)
Plaintiff's present cause of action was unquestionably revived by the 2002 legislation. Thus, he had a final opportunity to sue the Bishop during the calendar year 2003. However, no suit was filed during that year.

D. Resolution of the Statutory Dispute
Despite having failed to avail himself of the one-year revival window in 2003, plaintiff contends his lawsuit is timely under the "delayed discovery" provision of section 340.1, subdivision (a)"within three years of the date the plaintiff discovers or reasonably should have discovered that psychological injury or illness occurring after the age of majority was caused by the sexual abuse"which was made applicable to section 340.1, subdivision (b)(2) defendants in 2002 by virtue of subdivision (c). Plaintiff argues that, because he immediately repressed all memory of the molestations until June 2004, his claim did not "accrue" until then. The merit of this argument turns on whether the Legislature intended the courts to apply the three-year delayed discovery provision retroactively, to claims against intentional entity defendants that had previously lapsed.
(8) In general, a statute will be construed as prospective unless there is clear legislative intent that it apply retroactively. (Myers v. Philip Morris Companies, Inc. (2002) 28 Cal.4th 828, 844 [123 Cal.Rptr.2d 40, 50 P.3d 751]; Evangelatos v. Superior Court (1988) 44 Cal.3d 1188, 1207 [246 Cal.Rptr. 629, 753 P.2d 585].) Such intent has been found where there is express language of retroactivity, or where extrinsic sources undisputedly demonstrate that the Legislature intended the statute to be retroactive. (Evangelatos, supra, 44 Cal.3d at p. 1209 ["[I]n the absence of an express retroactivity provision, a statute will not be applied retroactively unless it is very clear from extrinsic sources that the Legislature . . . must have intended a retroactive application."].)
(9) The rule is even stricter in the case of legislative changes to a statute of limitations. "[A] legislative change in the statute of limitations is presumed not to revive lapsed claims unless the amending act expressly mandates such an effect. (Gallo v. Superior Court [(1988)] 200 Cal.App.3d [1375,] 1378 [246 Cal.Rptr. 587]; Barry v. Barry (1954) 124 Cal.App.2d 107, 112 [268 P.2d 147].) If the Legislature wishes to revive lapsed claims, it should so declare in `unmistakable terms.' (See Douglas Aircraft Co. [v. Cranston (1962)] 58 Cal.2d [462,] 466 [24 Cal.Rptr. 851, 374 P.2d 819].) Otherwise such claims will be left to lie in repose." (David A., supra, 20 Cal.App.4th at p. 286.)
*1400 In this case, the three-year delayed discovery provision contains no unmistakable, express language of retroactivity. Nor is there anything in the legislative history of section 340.1 that indisputably shows a retrospective application was intended. On the contrary, an examination of the history of the statute points to the opposite conclusion.
Whenever it has amended section 340.1, the Legislature has been clear about whether the courts may apply new limitations periods retroactively. In 1990, the Legislature inserted language containing a limited revival of actions commenced after 1987. The 1994 amendment provided that the liberalized discovery rule enacted in 1990 shall "apply to any action commenced on or after January 1, 1991, including any action otherwise barred by the period of limitations in effect prior to January 1, 1991, thereby reviving those causes of action which had lapsed or technically expired under the law existing prior to January 1, 1991." (§ 340.1, former subds. (o)-(p), added by Stats. 1994, ch. 288, § 1, p. 1928, italics added.) This amendment was added to overrule David A., supra, 20 Cal.App.4th at page 286, a case which had held that the 1990 amendment did not revive lapsed claims. (Legis. Counsel's Dig., Assem. Bill No. 2846 (1993-1994 Reg. Sess.) 5 Stats. 1994, Summary Dig., p. 111.)
In 1999, the Legislature clarified that its 1998 changes relating to the liability of nonabuser persons or entities were to be applied to actions commenced on or after or pending as of January 1, 1999, "`including any action or causes of action which would have been barred by the laws in effect prior to January 1, 1999.'" (Shirk, supra, 42 Cal.4th at p. 208, quoting § 340.1, former subd. (s), added by Stats. 1999, ch. 120, § 1.)
Finally, the 2002 amendments, while removing the age 26 cap on subdivision (b)(2) defendants, explicitly provided that, as to lapsed claims, the applicable limitations period "is revived," provided suit was commenced within one year of January 1, 2003. (§ 340.1, subd. (c), italics added.)
This sequence demonstrates that the Legislature knows precisely how to specify whether and under what conditions a newly enacted statute of limitations period should be applied to revive lapsed claims. In 2002, the Legislature opened the gates to lapsed claims against subdivision (b)(2) defendants, but only for a limited one-year period. The enactment, in clear stentorian language, of a one-year revival period, announced to the world that these types of claims must be brought within that period or forever remain in repose. It would be illogical to infer that the Legislature silently intended that lapsed claims not filed within the window period could nevertheless be revived through the back door by use of the delayed discovery rule.
*1401 Our conclusion is in accord with the result in Hightower. There, a prisoner who had allegedly been molested by a priest in the early 1970's claimed that his suit against a Catholic bishop, filed in April 2004, was timely because the delayed discovery rule of section 340.1, subdivision (a) applied. (Hightower, supra, 142 Cal.App.4th at pp. 761, 763, 767.) The court flatly rejected the notion, stating, "When the Legislature first applied the delayed discovery rule to entity defendants like the bishop in 1998, those claims were subject to the outer limit of the plaintiff's 26th birthday, meaning that his claims remained time-barred. Effective 2003, the Legislature extended the limitations period for claims such as Hightower's to the later of the plaintiff's 26th birthday or the date when the plaintiff discovered that his psychological injuries were caused by sexual abuse. At the same time, the Legislature revived for only one year all such claims that were already time-barred. The Legislature therefore drew a clear distinction between claims that were time-barred and those that were not. Hightower's interpretation would obliterate that distinction by allowing his time-barred claim to take advantage of the new limitations period. Therefore, the new delayed discovery rule does not revive Hightower's previously lapsed claims." (Hightower, at pp. 767-768, italics added.)[9]
Plaintiff's argument suffers from the same infirmity as Hightower's. It presupposes an implicit, unexpressed intent to enact a delayed accrual rule retroactively, contrary to settled rules of statutory interpretation and despite the Legislature's unambiguous intent to treat lapsed and unlapsed claims differently.
The unavailability of section 340.1's delayed accrual rule to revive lapsed claims appears to have been acknowledged by the California Supreme Court in Shirk. Shirk, a 41-year-old plaintiff in 2003, claimed she was the victim of sexual misconduct by her male teacher during the 1978-1979 school year. She sued the school district that employed him on the basis that it knew or should have known that he was a sexual predator. Shirk filed a government tort claim in September 2003, the date on which she allegedly "discovered" the connection between her psychological problems and the sexual abuse. The trial court sustained a demurrer without leave to amend on the ground that Shirk failed to timely file a government tort claim in 1980. (Shirk, supra, 42 Cal.4th at pp. 205-206.)
Although the suit was brought under the 2003 "revival" window set forth in section 340.1, Shirk still faced the problem of having failed to file a *1402 government claim within the statutory period.[10] She attempted to steer around this obstacle by relying on the delayed discovery rule in section 340.1, subdivision (a), contending that her claim did not "accrue" until she discovered that the sexual abuse was the cause of her psychological injuries. (Shirk, supra, 42 Cal.4th at p. 206.) After reviewing the history of the statute, the Shirk court reaffirmed the long-settled rule that a cause of action for sexual abuse accrues at the time of the molestation. (Id. at p. 210.) Finding no indication in either the language or history of the statute that the Legislature's magnanimity in liberalizing the limitations period for civil actions for childhood sexual abuse also included an intent to excuse or delay the time for filing tort claims against governmental entities, the state's high court held Shirk's action was properly dismissed. (Id. at pp. 211-213.)
Had the state Supreme Court accepted the argument advanced by Shirk  and repeated by plaintiff herethat section 340.1 actions against intentional entity defendants do not even accrue until discovery of the psychological abuse, Shirk's claim would have been ruled timely, since the time for filing a government claim runs from the date of accrual (see fn. 10, ante). The fact that the court adhered to the general rule that the claim accrued when the molestations occurred constitutes an implied rejection of the notion that lapsed childhood sexual abuse claims can "accrue" a second time under a delayed discovery theory.
Although unnecessary to our decision, legislative materials surrounding the enactment of Senate Bill No. 1779 (2001-2002 Reg. Sess.), of which we have taken judicial notice (see fn. 4, ante), confirm our interpretation. A summary of the 2002 amendments prepared for the Assembly Judiciary Committee cites two aspects of the bill: first, "[r]etroactive application and revival of lawsuits," to "create a one-year window" for victims of childhood sexual abuse to bring lawsuits against intentional entity defendants that would otherwise have been barred by the age 26 cap; and, second, "Prospective application: People who discover their adulthood trauma from the molestation after the effective date of the bill will have three years from the date the victim discovers or reasonably should have discovered that the adulthood trauma was caused by the childhood abuse." (Italics added.)
The statement on the floor by the author of Senate Bill No. 1779 (2001-2002 Reg. Sess.), John Burton, mirrors this summary. Senator Burton *1403 told his colleagues that the bill would allow actions to be filed after the victim's 26th birthday against "a person or entity that knew or had reason to know of any complaint against an employee for unlawful sexual conduct and failed to take reasonable steps to avoid similar acts . . . in the future. . . . [¶] This bill also revives actions that were previously barred by the statute of limitations and allows those actions to be filed within one year of the effective date of this bill." (Italics added.)
These background materials support our conclusion that while the Legislature intended to lift the age 26 cap prospectively as a prophylactic measure, it sought to revive lapsed actions only for a limited one-year period.
Amicus curiae counsel appearing on behalf of plaintiff discerns a contrary intent from the Legislature's retention and redesignation of section 340.1, former subdivision (s) as subdivision (u) in 2002. Current subdivision (u) (originally enacted as subd. (s) in 1999) states, in relevant part: "The amendments to subdivision (a) of this section, enacted at the 1998 portion of the 1997-98 Regular Session, shall apply to any action commenced on or after January 1, 1999, and to any action filed prior to January 1, 1999, and still pending on that date, including any action or causes of action which would have been barred by the laws in effect prior to January 1, 1999." (Italics added.) Because section 340.1, subdivision (a) contained delayed discovery language, amicus curiae argues that the Legislature's preservation of subdivision (u), considered "cumulatively" with the amendments in 2002, evinces an intent to apply the delayed discovery rule to entity defendants retroactively.
This argument ignores the fact that section 340.1, subdivision (u) refers only to the amendments to section 340.1, subdivision (a) enacted in the 1997-1998 Regular Session. That legislation capped the limitations period at age 26. Thus, the Legislature's retention of the subdivision says nothing about its intent in 2002 when, for the first time, it lifted the age 26 cap and allowed a delayed discovery rule to be applied to intentional nonabusers. (§ 340.1, subds. (b)(2), (c).)

E. Common Law Delayed Discovery Theories
Both plaintiff and amicus curiae counsel assert that, regardless of whether section 340.1 expressly permits it, plaintiff may avail himself of the common law delayed discovery doctrine, which "postpones accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action." (Norgart v. Upjohn Co. (1999) 21 Cal.4th 383, 397 [87 Cal.Rptr.2d 453, 981 P.2d 79].) Their primary authority is Evans, supra, 216 Cal.App.3d 1609. Evans was a case where the adult plaintiffs sued their uncle and former *1404 foster father for sexual abuse they suffered in their childhood. (Id. at p. 1612.) They claimed that "`psychological blocking mechanisms'" such as fear, internalized shame, disassociation and repression caused them to be unaware, for decades, of both the sexual abuses and the psychological injuries they caused. (Id. at p. 1613.) The Court of Appeal, First Appellate District, Division Five, applied the common law "delayed accrual" doctrine applicable to fiduciary relationships to hold the complaint sufficient to withstand a demurrer based on the statute of limitations. (Id. at pp. 1614-1616.) "We conclude that the purposes of the statute of limitations and the rationale of the delayed discovery rule as it has developed in our courts require that accrual of a cause of action for child sexual abuse by a parent or similar figure of authority be delayed until the plaintiff knows or reasonably should know of the cause of action." (Id. at p. 1617.)
However, Evans was decided in early 1990, at a time when section 340.1 gave courts express permission to apply equitable delayed discovery principles to lawsuits alleging child molestation. Former subdivision (d) of the statute then stated: "`Nothing in this bill is intended to preclude the courts from applying delayed discovery exceptions to the accrual of a cause of action for sexual molestation of a minor.'" (Evans, supra, 216 Cal.App.3d at p. 1614, italics added.) Evans quoted that section and relied on it as a legislative imprimatur for its decision. (Ibid.)
Four years after Evans, when the Legislature liberalized the limitations period to commence actions for childhood sexual abuse, it also eliminated the provision allowing courts to apply equitable delayed discovery exceptions to the statute of limitations.[11] That deletion has been preserved in all subsequent amendments to the statute.
Amicus curiae on behalf of plaintiff dismisses the deletion of section 340.1, former subdivision (d) as "removal of surplusage." We disagree. Cases such as Evans had applied equitable, common law principles of delayed discovery to avoid normal rules regarding accrual in cases of childhood abuse. This practice could easily have continued unabated unless the Legislature put a stop to it.
(10) "`It is ordinarily to be presumed that the Legislature by deleting an express provision of a statute intended a substantial change in the law.'" (People v. Dillon (1983) 34 Cal.3d 441, 467 [194 Cal.Rptr. 390, 668 P.2d 697], quoting People v. Valentine (1946) 28 Cal.2d 121, 142 [169 P.2d 1].) "`Where the Legislature omits a particular provision in a later enactment *1405 related to the same subject matter, such deliberate omission indicates a different intention which may not be supplanted in the process of judicial construction.'" (Hoschler v. Sacramento City Unified School Dist. (2007) 149 Cal.App.4th 258, 269 [57 Cal.Rptr.3d 115], quoting Kaiser Steel Corp. v. County of Solano (1979) 90 Cal.App.3d 662, 667 [153 Cal.Rptr. 546].)
In light of these rules, we cannot view the elimination of section 340.1, former subdivision (d) as a mere housekeeping measure. By withdrawing its previous sanction of common law principles at the same time it made it easier for victims of childhood sexual abuse to sue, the Legislature drew a line in the sand, declaring an end to employment of common law delayed discovery theories that were not expressly set forth in the statute.
We conclude that plaintiff may not rely on common law delayed discovery rules that are inconsistent with the limitations periods expressly set forth in section 340.1.[12]
We decline to reach the question posed by amicus curiae for plaintiff of whether the theory of equitable estoppel  which is conceptually distinct from delayed discovery (see John R., supra, 48 Cal.3d at pp. 444-445, fn. 4)may apply to excuse timely filing under section 340.1. That theory was never raised by plaintiff, either in the trial court or on this appeal. Hence, it is not properly before us. (See People ex rel. Dept. of Transportation v. Superior Court (2003) 105 Cal.App.4th 39, 46 [129 Cal.Rptr.2d 60] [appellant may not raise issues never considered by the trial court]; Bialo v. Western Mutual Ins. Co. (2002) 95 Cal.App.4th 68, 73-74 [115 Cal.Rptr.2d 3] [issues raised only by the amicus curiae briefs are not cognizable].)

*1406 F. Conclusion

Plaintiff's cause of action against the Bishop for childhood sexual abuse accrued when the molestations occurred. Because he failed to file suit by age 19, the statute of limitations expired. (Shirk, supra, 42 Cal.4th at p. 210; Doe v. Bakersfield City School Dist., supra, 136 Cal.App.4th at p. 567, fn. 2.) Plaintiff's lapsed claim remained in repose until it was revived during the calendar year 2003, but he failed to avail himself of the opportunity to file suit within the statutorily advertised window period.
Plaintiff's allegations of repressed memory do not save his complaint, because the delayed discovery rule applicable to intentional nonabuser defendants (see fn. 6, ante) that was added to section 340.1 in 2002 did not have retrospective effect. Consequently, it did not operate to revive decades-old claims such as plaintiff's, which had lapsed due to the running of the statute of limitations.

DISPOSITION
The judgment is affirmed. Defendant is awarded costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1).)
Scotland, P. J., and Blease, J., concurred.
NOTES
[1] Undesignated statutory references are to the Code of Civil Procedure.
[2] Plaintiff alleges that the abuse took place from 1967 to 1971, when he was seven through 11 years old. This would place his birth date in the calendar year 1959 or 1960.
[3] Except for the Bishop, who was named as "Doe 1," none of the other defendants is a party to this appeal.
[4] Plaintiff requests that we take judicial notice of legislative history materials regarding Assembly Bill No. 2846 (1993-1994 Reg. Sess.), which amended section 340.1 in 1994. Amicus curiae for plaintiff requests that we take judicial notice of legislative materials relevant to Assembly Bill No. 1651 (1997-1998 Reg. Sess.), which amended the statute in 1998, and Senate Bill No. 1779 (2001-2002 Reg. Sess.), which amended the statute in 2002. We grant both requests. (See Doe v. City of Los Angeles, supra, 42 Cal.4th at p. 544, fn. 4.)
[5] "Childhood sexual abuse" is defined in subdivision (e) of section 340.1 as "any act committed against the plaintiff that occurred when the plaintiff was under the age of 18 years and that would have been proscribed" by enumerated Penal Code sections dealing with sex crimes.
[6] In the course of this opinion we use the term "subdivision (b)(2) defendant" interchangeably with "entity defendant" or "intentional nonabuser defendant." We use the word "intentional," not in the sense that defendant intended the sexual abuse to occur, but that it had knowledge or constructive notice of specific instances of past unlawful sexual conduct by the agent or employee who is accused of sexual misconduct toward the plaintiff. (See Doe v. City of Los Angeles, supra, 42 Cal.4th at p. 549.)
[7] The term "lapsed" is used herein to "describe a cause of action against which the limitations period has run, but which no court has adjudicated." (David A. v. Superior Court (1993) 20 Cal.App.4th 281, 284, fn. 4 [24 Cal.Rptr.2d 537] (David A.).)
[8] Former subdivision (d) of section 340.1 stated: "Nothing in this bill is intended to preclude the courts from applying delayed discovery exceptions to the accrual of a cause of action for sexual molestation of a minor." (See Evans v. Eckelman (1990) 216 Cal.App.3d 1609, 1614 [265 Cal.Rptr. 605] (Evans).) The language was retained as subdivision (l) in 1990: "Nothing in the [1990] amendments . . . shall be construed to preclude the courts from applying equitable exceptions to the running of the applicable statute of limitations, including exceptions relating to delayed discovery of injuries, with respect to actions commenced prior to January 1, 1991." (Amended by Stats. 1990, ch. 1578, § 1, p. 7552.)
[9] While it is true that the Hightower court also rejected the plaintiff's claim on the alternative ground that the plaintiff's allegations were insufficient to trigger the delayed discovery rule, that conclusion was dictum, since the court had already ruled that his complaint was time-barred. (Hightower, supra, 142 Cal.App.4th at p. 768.)
[10] As the Shirk court explained, "such claims must be presented to the government entity no later than six months after the cause of action accrues. (Gov. Code, former § 911.2, as amended by Stats. 1987, ch. 1208, § 3, p. 4306.) Accrual of the cause of action for purposes of the government claims statute is the date of accrual that would pertain under the statute of limitations applicable to a dispute between private litigants." (Shirk, supra, 42 Cal.4th at pp. 208-209.)
[11] In 1990, the Legislature reenacted section 340.1, former subdivision (d) in substantially the same form as subdivision (l). (See fn. 8, ante.) The 1994 bill deleted this language from section 340.1 altogether. (Historical and Statutory Notes, supra, foll. § 340.1, pp. 172-173.)
[12] Curtis T. v. County of Los Angeles (2004) 123 Cal.App.4th 1405 [21 Cal.Rptr.3d 208], upon which plaintiff and amicus curiae heavily rely, does not persuade us otherwise. In Curtis T., a guardian ad litem filed a government claim for damages against Los Angeles County on behalf of a 12-year-old child, based on molestations that occurred in a foster home when he was between five and eight years old. (Id. at pp. 1411-1413.) The Court of Appeal for the Second Appellate District, Division One, applying principles of equitable delayed discovery, held that the claim was timely as long as the guardian could establish that she could not, with reasonable diligence, have discovered the molestations earlier. (Id. at pp. 1422-1423.) Unlike actions against private parties, the statute of limitations to file a minor's claim against a public entity is not automatically tolled until the minor reaches the age of majority. (See § 352, subd. (b).) The Curtis T. court emphasized that its decision was limited to the filing of government claims against public entities on behalf of minors who, because of their tender age, may not appreciate the wrongfulness of what was done to them. (Curtis T., at pp. 1409, 1422.) It also acknowledged that the limitations period for adult plaintiffs to file civil actions based on childhood sexual abuse was governed by section 340.1, a statute which it had no occasion to interpret. (Curtis T., at pp. 1419-1420.) Opinions are not authority for issues they do not consider. (Stoll v. Shuff (1994) 22 Cal.App.4th 22, 27 [27 Cal.Rptr.2d 249].)